*Sept.* 27th.            WOODS *against* MONELL AND OTHERS.

> Where a tract of land is divided into separate and distinct lots and parcels,
> it is the duty of the sheriff, who has an execution against the land, to sell
> it in parcels, and not the whole tract together.  But, to set a sheriff's sale
> aside, there must be satisfactory evidence of fraud, or abuse of power, in
> the sheriff.

    THE bill stated, that on the 30th of *July*, 1812, *Sackett*,
one of the defendants, was seised of the premises, being in-
debted to the plaintiff and others ; and, in order to secure
them, conveyed the premises to the plaintiff, his heirs and
assigns ; and the deed was registered the 6th of *August*,
1812.  The premises are described as situate in the town

of *Newburgh*, being lot No. 34., and the easterly end of lot No. 38., containing three acres and a half, bounded south by the turnpike road, east by *Liberty-street*, north by land of *Smith*, &c. and west by land of *Taylor*, &c. excepting, out of the said tract of land, 10 lots fronting on the turnpike road, before sold.  At the time of the execution of the deed, the plaintiff gave to the defendants a declaration of *trust*, covenanting to sell such part of the said lands as were unencumbered, and apply the proceeds towards discharging incumbrances on the residue, and after the encumbrances were removed, to sell the residue of the lots or parts of land, and apply the proceeds to pay the residue of the debts of *Sackett*, and return him the overplus, if any.  The plaintiff took possession under his deed, and leased the premises to *Jonathan Hasbrouck*.  At the time of the conveyance, a *part* of the premises were encumbered by a mortgage to *W. Lawrence*, for 3,500 dollars ; and the premises, by a judgment in favour of *Austin* and *Andrews*, for 1,114 dollars, and which judgment, after the deed, was sold to the defendant, *Monell.*  A judgment was docketed, the 18th of *July*, 1812, in favour of *E. Griswold*, against *Sackett*, for 84 dollars and 92 cents ; and another judgment was docketed against *Sackett*, in favour of *Duryee* and *Heyer*, for 394 dollars and 62 cents.  *Monell* refused to sell his judgment to the plaintiff.  Executions were issued on all the judgments, and the sheriff sold all the premises together, at once, under the judgments, on the 23d of *February*, 1813, subject to all encumbrances.  The bill further stated, that the premises consisted of town lots, and might have conveniently been sold separately ; that *Sleght*, who was the attorney of *Duryee* and *Heyer*, and the defendants, *Monell* and *Weller*, attended the sale.  The plaintiff was, also, present, and gave notice of his deed of trust, and requested the sheriff to sell in parcels, and not on any judgment posterior to the date of his deed.  That a bill was then pending by *Lawrence* to foreclose his mortgage.  The premises were sold and conveyed to *Sleght*, the highest

1815.<br>WOODS<br>v.<br>MONELL.

1815.

WOODS
v.
MONELL.

bidder, for 1,200 dollars, in behalf of *Monell* and *Weller*, to whom he afterwards conveyed. That the premises were worth, over and above the mortgage, more than 10,000 dollars. That the defendants, *Monell* and *Weller*, had commenced actions of ejectment to recover possession of the premises. The plaintiff offered to pay off the judgment in favour of *Griswold*; and prayed an injunction to stay the action of ejectment; and that the sale, by the sheriff, might be set aside as fraudulent and void.

The answer of the defendants admitted the deed of trust to the plaintiff, the judgments, executions, sheriff's sale, &c.; that the plaintiff requested the sheriff to sell in parcels; that he sold the whole together under the three executions, and declared that the sale was subject to all encumbrances; that the premises had been laid out into town lots on a map; but no one informed the sheriff of the divisions or numbers of the lots; nor did it appear that they had been divided, except on paper. *Monell* denied that the plaintiff had offered to purchase, or that he had refused to assign to him the judgment of *Austin & Andrews*. That the premises sold for nearly their value, and would not have brought much more had the sale been in distinct parcels or lots.

*Sackett*, son of the defendant, *Sackett*, who was sworn as a witness for the plaintiff, stated, that the premises, at the time of the sheriff's sale, were worth about 12,000 dollars, and were divided and laid out into lots, to the map of which he referred; and that, at the time of the sale, they were divided into five separate lots by fences. That he was present at the sale, and the sheriff declared that he sold by virtue of the three executions in favour of *Austin & Andrews*, *Griswold*, and *Duryee & Heyer*; that the plaintiff requested that the premises might be sold in parcels, and *Monell* said he did not know him in the business. The sheriff declared that he should sell all the right of *Sackett*, in the premises; that the plaintiff informed the sheriff, and those present, of his deed, and requested the

sheriff to sell on the first judgment only; that it was generally known at *Newburgh* that the premises were divided into town lots.

1815.

Woods
v.
Monell.

*D. Wright,* another witness for the plaintiff, who was acquainted with the premises, and was present at the sale, said that they had been laid out into building lots, but he did not recollect seeing any cross fences; that the plaintiff requested the sheriff to sell in parcels, and on the first judgment only; that *Monell,* the defendant, said he did not know the plaintiff in the business, and directed the sheriff to proceed and sell all the premises together, under all the judgments; that *Sleght* gave similar directions to the sheriff. The sale was near by, and in view of the premises. The map, which was produced, was dated *November,* 1812.

*P. A. Jay,* for the plaintiff.

*Burr,* contra.

THE CHANCELLOR. The suit is brought to set aside the sheriff's sale, on the ground of fraud. The plaintiff has not made out a case of actual fraud; and if the sale is invalid, it must be because the premises described in the case were sold contrary to law, by being sold entire, and not in parcels, as the plaintiff requested.

I have no doubt of the value and solidity of the rule, that where a tract of land is in parcels, distinctly marked for separate and distinct enjoyment, it is, in general, the duty of the officer to sell by parcels, and not the whole tract, in one entire sale. To sell the parcels separately is best for the interest of all the parties concerned. The property will produce more in that way, because it will accommodate a greater number of bidders, and tends to prevent odious speculations upon the distresses of the debtor. Nor does the officer act within the spirit of his authority, if he sells more than is requisite to satisfy the execution. To

sell a whole tract, when a small part of it would be sufficient, or, probably sufficient, for the purpose, is a fraud that ought to set the sale aside. The principle which I have suggested has received a judicial sanction; (*Rowley* v. *Webb*, 1 *Binney*, 61. *Executors of* *Stead* v. *Course*, 4 *Cranch*, 403. *Hewson* v. *Deygert*, 8 *Johns. Rep.* 333.;) and whenever a case comes fairly within the reach of it, I shall very willingly adopt and apply it.

But I do not perceive that the circumstances of this case are sufficient to warrant the application of the rule.

The plaintiff was present at the sale, and became a bidder. He requested the sheriff to sell the premises by lots, and not in one entire parcel ; but he produced no map or other description of the ground as laid out in lots. In the deed of trust under which the plaintiff claimed title, and which had been executed to him by the defendant in the execution, about six months before, the ground was not designated by lots, but was described as a " certain lot, piece, or parcel of land, known and distinguished on a map, &c. as lot No. 34., and the easterly end of lot No. 38., containing three and a half acres, and bounded," &c. And when the plaintiff took possession of this " said tract of land," under his deed, ·he leased the same as one entire parcel to *I. Hasbrouck;* and so it appears to have been enjoyed at the time of the sale.

The sale is represented as having been made on the land. To bring the sheriff in default, or to charge him with an abuse of trust, the plaintiff, who was then in possession, and claimed the land, ought, at least, to have furnished the sheriff with clear and distinct proof of the division of the three acres into town lots, and of the size and description of these lots, and that the same was the act of the owner. So small a tract, and under the occupation of one tenant, will not, without other circumstances, raise the presumption of an abuse of power in the sale. One of the witnesses says, that the premises, at the sale, were divided into five lots, by fences ; but

the other witness, who was also present at the sale, says, he does not recollect any cross fences, and if they were then visible, the whole was still in the occupation of one tenant; those fences could not have been intended for the evidence of any division in pursuance of the map to which the witnesses refer, and which is made an exhibit in the cause; for by that map, the ground was divided into a great number of small lots; and it bears date within three months of the sale.

1815.

Woods
v.
Monell.

There is another objection which has been suggested. The sheriff had in his possession, at the time of sale, executions on three judgments against the same defendant, two of which were older, and the other younger, than the deed of trust to the plaintiff; and he did not discriminate distinctly, at the outcry, that he sold under the oldest execution exclusively; but it is left to be inferred, that he sold, generally, under those three executions, all the right and title of the defendant. There was no concealment in the case of any fact. The executions were all known and mentioned, and I do not perceive any abuse of power in this circumstance that can affect the sale. It is admitted that the sheriff sold under the first execution. The deed to the purchaser mentions the two first executions, and them only; and as the first execution would pass all the title of the defendant, every bidder knew, or was bound to know, that his title would have been perfect under the sale, subject only to encumbrances prior to the first execution, and of such encumbrances every one had the means of knowledge as well as the sheriff.

I see no sufficient ground, therefore, upon which this bill can be sustained; and it must, accordingly, be dismissed as to all the defendants, with costs.

*Decree accordingly.*