### Catlett and Another *v.* Gilbert and Another.

Sheriff's Sales.—Where the sheriff, in selling real estate under execution, fails to comply with the requirement of the statute prescribing that, "if the estate consists of several lots or parcels, each shall be offered separately, and no more of any real estate shall be offered for sale than shall be necessary to satisfy the execution in the sheriff's hands, unless the same is not susceptible of division," the sale will be set aside.

Same.—The cases of *West and Another* v. *Cooper*, 19 Ind. 2, and *Patton et ux.* v. *Stewart*, *Id.* 233, so far as they change the rule previously existing with regard to sheriff's sales, are overruled.

APPEAL from the *Vanderburgh* Common Pleas.

#### ABSTRACT.

The complaint alleges that *Gilbert* and *Baker*, the plaintiffs below, are the owners and entitled to the possession of three lots in the city of *Evansville*, and that the defendants, *William A.* and *William S. Catlett*, who were father and son, were in the wrongful possession thereof; that the lots were formerly owned by the elder *Catlett*, who, being indebted to the plaintiffs and others, to avoid the payment of the debts, made a fraudulent and voluntary conveyance to *William S.*, his infant son, of said three lots; that afteward judgments were obtained and executions issued, in favor of the plaintiffs and others, and against *Catlett*, sen.; and that the lots were sold and con-

veyed to the plaintiffs by the sheriff, under and by virtue of these executions.

Prayer for possession and damages, and that plaintiffs' title might be quieted.

The first paragraph of the answer admits that the plaintiffs have a *prima facie* title to the premises, but alleges that the sheriff's title, under which plaintiffs claim, is irregular, for the reasons set forth; viz: that the whole amount due upon the executions in the hands of the sheriff, and upon which the sale and conveyance was made, was only $350; that lots 12 and 13, in block 2, were each of the value of $300, and lot 13, block 52, was of the value of $1,500, and that said last-named lot was sold for $365, being $15 more than the whole of the claims in the sheriff's hands; and that the sheriff unnecessarily sold the other two lots for $5 each; and that the sheriff conveyed the lots to the plaintiffs, which is the only pretense of title claimed by them. The answer further alleges that there were two separate tenements upon lot 13, block 52; that it was divided by a partition fence across the center of said lot at the date of said sale, and for a long time previous thereto, and was occupied as *two separate parcels*, of which the plaintiffs and the sheriff had notice; and that either parcel would have brought enough to satisfy the whole sum due on the executions, but that the sheriff, disregarding his duty, sold the whole lot without offering it in separate parcels; and that the plaintiffs derive title to these lots through this sale and conveyance, and not otherwise. Prayer, that the sale be set aside.

The second paragraph of the answer is a general denial. A demurrer was sustained to the first paragraph of the answer, and exception taken. Trial, finding for plaintiffs, and judgment; motion for new trial overruled, and exception taken.

RAY, CH. J.—The section of the statute which must govern the decision of the main question involved in this

case, reads as follows: "If the estate consists of several lots, tracts, or parcels, each shall be offered separately, and no more of any real estate shall be offered for sale than shall be necessary to satisfy the execution in the sheriff's hands, unless the same is not susceptible of division."

The duty of the sheriff, when making an offer of real property which is susceptible of division, has been repeatedly defined by this court. In *Reed et al.* v. *Carter*, 1 Blackf. 410, and 3 Blackf. 376, this court quoted with approbation the rule stated by Chancellor *Kent*, in *Tiernan* v. *Wilson*, 6 Johns. Ch. Rep. 411, that "the proposition is not to be disputed, that a sheriff ought not to sell, at one time, more of the defendant's property than a sound judgment would dictate to be sufficient to satisfy the demand, provided the part selected can be conveniently and reasonably detached from the residue of the property, and sold separately." This court, in the case then before them, reviewed the action of the sheriff, and held that he had not exercised a sound judgment in failing to offer the property in separate lots, and the sale was set aside.

At that time we had no *statute* requiring the sheriff to offer real estate in separate parcels, where it could be done. In the case of *O'Brien* v. *Coulter*, 2 Blackf. 421, this court again recognized the rule previously stated, and applied it to the case then before them, holding that "a part of the property could have been conveniently and reasonably selected and detached, being in two separate lots of land; one with a house upon it, and the other without any buildings." The subject was again considered in *Maguire* v. *Smith*, 4 Blackf. 228. There, after a town lot had been sold on execution, the execution debtor brought an ejectment for the lot against a person who claimed it under the purchaser at the sheriff's sale. Held, "that the propriety of the sheriff's conduct in selling the whole instead of a part of the lot was a proper subject of inquiry; and that evidence relative to the divisibility and value of the lot was in such case admissible." Justice *Blackford* uses

this language: "Whether the sheriff, in selling the whole instead of a *part of the half lot* levied on had exercised a sound legal discretion, or whether his conduct on the subject, was a flagrant abuse of his power, and a fraud upon the execution debtor, were legitimate questions, under all the circumstances of the case, for the consideration of the jury."

The statutes of 1843 provided "that if such estate shall consist of several *known* lots, tracts, or parcels, such lots, etc., shall be offered separately." Under this provision it was held, that "the entire tract (twelve hundred and eighty acres) should have been offered in separate parcels." *Sherry* v. *Nick of the Woods*, 1 Ind. 575. The section of the statute now in force was thus commented upon in the case of *Reed* v. *Diven*, 7 Ind. 189: "This provision of the statute imposes a duty on the sheriff which he may not omit. The property levied on being divisible, he is restricted from offering more of it than may be necessary to discharge the debt in his hands for collection. . . . . It is said, also, that to bring the sheriff in default for selling an entire body of land, without first offering it in parcels, the execution defendant must have furnished the sheriff, before or at the sale, a map or other description clearly showing that the land lay in separate tracts. The answer to this is, that the provision above quoted plainly indicates the sheriff's duty where the premises levied on are susceptible of division; in such case he is bound to offer them in separate quantities. We are advised that *Wood* v. *Morrell*, 1 Johns. Ch. Rep. 502, cited by the appellant, favors the position, that before the sale a map or description, showing that the land lay in tracts, should have been furnished the sheriff. That decision, however, relates to the rule as it existed at common law. But our statute contains no such requirement. Under it, it seems to us the sheriff himself, when he levies upon real estate, must be presumed to know whether it is susceptible of division." The judgment of

the court below,. setting aside the sheriff's deed, was sustained.

*Banks and Another* v. *Bales*, 16 Ind. 423, was an action to set aside a sheriff's sale, and annul a sheriff's deed made pursuant to the sale. In applying the section of the statute now under consideration to the facts in that case, this language is used: "It follows, the sheriff having thus failed to comply with the requirements of the statute, that the sale can not be upheld, and the sheriff's deed is therefore a *nullity*."

These authorities would indicate that the law was well settled in this state, and that the answer of the appellant in the case at bar was sufficient, clearly showing, as it did, not only that the property "was susceptible of division," but that it had in fact been divided, and that both the sheriff and the purchaser had notice of that fact. A current of authorities, so uniform and consistent, should not be suddenly obstructed, and a new channel sought, without a purpose well supported by authority.

The cases cited as changing this rule are *West and Another* v. *Cooper*, 19 Ind. 2, and *Patton et ux.* v. *Stewart*, *Id.* 233.

These cases rest upon the authority of *Cunningham* v. *Cassiday*, 17 New York Court of Appeals; *Smith* v. *Randall*, 6 Cal. 47; *Coxe* v. *Halsted*, 1 Green's Ch. 311, and *Penn* v. *Craig, Id.* 495. The decision in the case of *Cunningham* v. *Cassiday* was in giving construction, by the Court of Appeals of the state of *New York*, to a provision of their statute, that "if any person claiming to be the owner of any portion of such estate, or of such lots, tracts or parcels, or either of them, or claiming to be entitled by law to redeem any such portion, shall require such portion to be exposed for sale separately, it shall be the duty of the sheriff to expose the same for sale separately. No more of any real estate shall be exposed for sale than shall appear necessary to satisfy the execution." No evidence appears that any demand was made that the lots be sold

separately, and the court held that the statute requiring the sheriff to so offer them, under the circumstances, was directory, and the deed not void but voidable; and as the twelve months given the execution defendant to redeem had expired, without action by him, he should be held to have waived all defects. But we do not understand why this court should follow this decision, giving construction to a *New York* statute, after having refused, in *Reed* v. *Diven, supra,* to adopt the view of Chancellor *Kent,* requiring the execution defendant to produce a map showing the divisibility of theproperty. Nor why, after having held in *Banks and Another* v. *Bales, supra,* that the sheriff's deed was a *nullity,* we are now to hold the deed simply voidable, and estop the execution defendant from asserting its invalidity, because the *New York* court have done so under their statute, giving a certain time to redeem.

The relief in such cases is equitable, and a court of equity may well refuse its aid where the party has not complied with an express requirement of the statute in making the proper demand upon the sheriff, and has also neglected to avail himself of the relief afforded him at law, by redeeming the property within twelve months after the sale. But how can this authority aid us in deciding a case arising under our statute, where, as was held in *Reed* v. *Diven, supra,* no such obligation rests upon the execution defendant, but " the sheriff himself, when he levies upon real estate, must be presumed to know whether it is susceptible of division," and where no relief is afforded at law from the consequences of the officer's wrongful act?

In the case cited of *Penn* v. *Craig,* the Court of Chancery of *New Jersey* held that " it is the duty of a sheriff to sell property plainly divisible in separate parcels; yet where a sale is made in violation of this rule, if made *with the approbation of the owner of the property,* and if thirteen years have elapsed since the sale, and the property has descended to the heirs of the purchaser, the court will not for this cause alone disturb the title."

In *Coxe* v. *Halsted et al.*, *supra*, the same court distinctly recognize the rule as it has been so uniformly stated in our reports, but the court held that the case before them did not come within the rule. We quote from the decision: "The general rule is well settled, that where a tract of land is divided into distinct parcels, it must be sold in that way. *Wood* v. *Morrell*, 1 John. Ch. 505; *Mohawk Bank* v *Atwater*, 2 Paige's Ch. 61. See also the cases of *Marvin and Others* v. *Smith and Others*, in this court. Does this case come within that rule? This is the important inquiry. After a careful examination of the evidence, and with an earnest desire to protect the defendants from any abuse of their rights, I have come to the conclusion that I can not disturb this sale upon this ground. There are several considerations which forbid it.

" 1. The land is not subdivided into distinct parcels, so as to free the complainant from embarrassment in attempting to sell it in lots. This twenty-three acre lot was purchased a few years since, when property brought a high price, of the complainant, it being an open field, in the ordinary situation of farm lands. The defendant intended to turn it into building lots, and with that view laid streets across it in different directions, and made some improvements upon part of it, by building a basin, storehouse, and lime-kiln. The streets, however, it seems from the evidence, are not laid out according to law, nor in many instances are they even defined by fences. Much of the land lies in common. It is, in fact, one among many of those unfortunate cases in which lands lying in the neighborhood of towns and cities have been set apart on paper for extensive improvements, but which have failed from the embarrassments of the times, and that too with great loss to the purchasers. To oblige a master or sheriff to be bound by such subdivisions of property, would be attended with great uncertainty, and be a perversion of the spirit and intention of the rule.

"2. The decree and execution in this case fixed the order

in which the property should be sold, and the sale has been in conformity with them. There was great care taken at that time to secure the rights of all parties, and yet this question of selling this lot in parcels was never agitated.

"3. At the first sale of the property, the twenty-three acres were sold in one parcel without objection, and *purchased by one of the defendants*, who failed to comply with the terms, and now upon this re-sale, for the first time, is this difficulty interposed. Had it been considered important to have the lot subdivided, it is somewhat singular that it was not suggested at an earlier day, and particularly before the first sale was made.

"4. The great reason which would have induced me to direct a re-sale of this lot (had I found that course consistent with those principles which must govern the case) would have been, that *W. H.*, one of the defendants, had placed improvements upon a part of this lot. But the master testifies distinctly *that Mr. H. acceded to the selling of the property in the way in which it was sold.* This consent must take away therefore any complaint from that quarter.

"5. The act which authorizes a defendant to elect what part of his lands shall be sold by the sheriff on execution, by serving a notice on him twenty days previous to the sale, does not apply to this case."

The statute of *New Jersey*, to which the court referred, provides "that the person whose lands, tenements, hereditaments, and real estate are so taken in execution, may, *if part of them are sufficient to satisfy said execution*, elect what part thereof shall be sold," etc.

But as the court held that the act did not apply to the case in judgment before them, their decision can not even be regarded as authority in the construction of the *New Jersey* statute, but simply as applying the well-settled rule of common law to the case considered. Clearly, it can not justify the changed construction of our own statute.

The remaining decision, *Smith* v. *Randall*, 6 Cal. 47, so far as it rests upon authority, goes back to *Wood* v. *Morrell*,

1 John. Ch. 502, a decision which this court has already held (*Reed* v. *Diven, supra*) could have no weight in the construction of our statute.

But the Supreme Court of *California* place their judgment upon two grounds, which, while they admit the common law rule in its full force, relieve the case before them from its application. The court say: " As a general rule, the sales in mass, of land consisting of separate lots, are not tolerated or countenanced in courts of justice. But this rule should not be extended so as to allow a debtor, *by misleading the officer with a false description*, or by withholding information, to invalidate a sale under execution made in good faith in the entire absence of fraud." It is also stated that " under the law the land is sold, subject to redemption, within six months, by the payment of the purchase money, with damages, which amount to but little more than the current rate of interest in California."

These four cases are the only authorities cited for changing the rule, as stated in 1 Blackf., as existing at common law, and since then extended and declared by express statute, and consistently adhered to through a long line of decisions, until the recent volume of 19 Ind. In our opinion, they furnish no authority whatever for the changed construction; and we recognize in the case now in judgment, the force and accuracy of the earlier rulings of this court. It is also averred in the first paragraph of the answer, that lot No. 15 in block No. 52 was sold by the sheriff for $365, a sum in excess of the amount named in the execution, with the interest and cost thereon, and that the sheriff unnecessarily sold the other two lots.

The only reasonable construction of these allegations is, that the sales of the two last-named lots were made after the sum authorized by the execution had been realized. In this view, the latter sales would clearly have been unauthorized. The demurrer should have been overruled to the first paragraph of the answer.

The judgment is reversed, at the costs of the appellee, and all proceedings set aside, subsequent to the filing of the demurrer to the first paragraph of the answer. It is directed that the demurrer be overruled.

*Asa Iglehart,* for appellants.
*Charles Denby,* for appellees.