CHARLES R. BENNETT, Guardian,

*v.*

MARY A. HANIFIN.

1. SETTLEMENT—*receipt as evidence.* A receipt given by a ward to his guardian, in full of moneys coming to the ward, when shown to have been given without an accounting in fact at the time, and the ward denying any settlement, is entitled to but little weight as evidence of a settlement.

2. FORMER ADJUDICATION—*guardian's report.* A guardian's report to the county court, being simply an account of receipts and disbursements, and which does not purport to be final, makes no reference to the ward's age, and asks for no discharge, or claims any commissions, and the order of the court approving the same, will not be regarded as a final settlement of the guardian's account, and can not be urged as a bar to a citation for a final accounting.

3. GUARDIAN ACCOUNT—*chargeable with interest.* Where a guardian's reports showed the receipt of moneys belonging to his ward, and payments made by him, but contained no item of interest, it was *held*, that, notwithstanding the approval of his reports, the county court, on a proceeding to compel a final settlement, had the right to charge him with interest. Any mistake or omission in a former report may be rectified on final settlement.

4. EVIDENCE—*papers not filed in probate court.* Where a guardian's report of payments made by him gave no dates, but the amounts corresponded with those in vouchers, or receipts, in the papers of the estate, though not all marked filed, it was *held*, that such papers were admissible in evidence to fix the dates of the payments.

APPEAL from the Circuit Court of Jo Daviess county; the Hon. WILLIAM BROWN, Judge, presiding.

This was a citation, by the county court of Jo Daviess county, to Charles R. Bennett, guardian of Mary A. Hanifin, to make his final report and settlement with his ward, the citation issuing February 7, 1876.

In obedience to the citation, the guardian made report that, on the coming of age of his ward, she called on him for a full settlement of his account as guardian; that such ward and himself went to the probate court, and had the account made 1 ¬ and adjusted, and there was found to be due to his ward from him, as her guardian, the sum of $128.88, that being the full amount due her; and thereupon he paid said sum to her and took her receipt in full, which was therewith attached to the report as a part thereof; that the same being made in the presence of the clerk of the court, he supposed the account was closed, and that he was discharged from all responsibility without further report—praying that his report might be approved, and that he might be discharged. Appended whereto was the following:

" *Galena, August* 8, 1868.

"Received of Charles R. Bennett, guardian for myself, $128.88, in full for money left by my father for me.

" MARY A. HANIFIN."

There appeared in evidence, from the records of the county court of Jo Daviess county, the following:

" *Wednesday morning, August* 5, 1868.

"Court met pursuant to adjournment. The following proceedings were had, to-wit:

"*In the matter of Mary Hanifin, an heir at law of John Hanifin, deceased.*  } *Guardian's Report.*

"Now, at this day, comes Charles R. Bennett, guardian of said Mary Hanifin, and makes report of his actions and doings in the premises; and it appears that said guardian was indebted to said ward, at the time of making his last report, (December 18, 1866,) in the sum of $723.88; and said guardian has paid since his last report, in taxes and cash, for said ward,

up to April 1, 1876, the sum of $510; also, has paid out for said ward, in cash, from April 1, 1867, up to date, the sum of $85, making total paid out since last report the sum of $595, leaving a balance in the hands of said guardian, and due said ward, the sum of $128.88; and said Mary Hanifin, the aforesaid ward, being present in court, examines said report, and said guardian having been duly sworn that said report is true and correct, it is ordered by the court that said report be approved."

In the guardian's report, filed December 18, 1866, he reports as follows:

"April 10, 1855, received of W. C. Bostwick,    $61 75
   December 29, 1856, sale of real estate,   -   -    600 00
   December 29, 1857, sale of real estate,    -     600 00
                                               $1261 75"

Then he reports a number of payments, and strikes a balance in his hands of $723.88. The guardian was appointed February 6, 1855. The testimony satisfactorily shows that the ward came of age—eighteen years old—in August, 1868, leaving it uncertain on what day of the month. In the petition for his appointment, the guardian stated that the ward would be five years old on the — day of August, 1855.

With respect to the receipt, the appellee gave testimony that she bought a sewing machine at Dubuque, and came to Galena August 8, 1868, to get the money; that she met appellant on the street, and asked him for $ . ) pay for it; that he went into a store, wrote the receipt, and she signed it without reading it, and he then handed her $128 and some cents, and said that was all the money coming to her; that she was surprised at the time, and told appellant she thought there was more, and that was all that was said about it. Mary J. Kelly, a cousin of appellee, testified that she was with appellee at the time, and corroborated her testimony in all respects.

Appellee further testified that she was not in Galena (the place of holding the county court) on the 5th day of August,

3—87 ILL.

1868, and never came into court and examined the report. She was positive of this.

Mrs. Kelly testified that appellee came to Galena, from Dunleith, the same day she got the money, and stopped at their house; that she had not been in Galena for six or eight months before; that she always stopped at their house when in Galena; that she was with appellee all that day, and that she was not at the court house that day. Daniel Kelly also testified that appellee stopped at his house when in Galena, and he did not know of her being there for five or six months before the money was paid.

Appellee further testified that, after appellant paid her the money, she consulted a lawyer in Galena; that he told her appellant's securities were dead, and worth nothing, and it was useless to do anything, as he was involved.

There was no contradictory testimony upon the points testified to by these witnesses. Appellant appears not to have been present himself at the trial.

The present appeal was taken by Bennett from a judgment of the circuit court finding there to be due from him, as her late guardian, to Mary A. Hanifin, the sum of $804, such judgment having been rendered on appeal from the county court, where, on the hearing upon the report, there had been a finding in favor of Mary A. Hanifin for $525.50.

Mr. M. Y. JOHNSON, for the appellant.

Messrs. D. & T. J. SHEEAN, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The claim of appellant is, that he made a full and final settlement of his guardianship account with his ward, after she came of age, before the county court, which then found and adjudicated that the sum of $128.88 was the whole amount due, which he paid over to appellee; and that this adjudication is to be held conclusive between the parties, of the

amount due, except in a direct proceeding on appeal or error to reverse it, or upon a bill in chancery to impeach it on the ground of fraud or mistake.

Appellant takes his stand upon this order of the county court of August 5, 1868, and the payment made thereunder, as a full bar to the present proceeding.

In view of the testimony of the circumstances under which the receipt of August 8, 1868, was given, that receipt is entitled to very little effect as evidence of any settlement.

The testimony introduced to contradict the statement in the record of the county court of the appearance of appellee, we hold to be insufficient to that end. The verity of a record in such respect is not to be thus lightly impeached. We must take it, then, as the order states—that appellee was present in court at the time of the making of it; but we are unable to assign to the order the character which appellant would attribute to it. There is nothing which indicates that there was a final settlement on August 5, 1868. The guardian's report, upon which the order was made, in no respect purports to be a final report. It says nothing as to the ward being of age, does not ask a discharge of the guardian, but is a simple account of receipts and disbursements. An inspection of the report shows that the court found nothing except what appeared upon the face of the report. The order contains no intimation of a final settlement, does not direct that the guardian be discharged upon the payment of the balance found to be due, in his hands or otherwise, but merely approves the report.

The sixth section of the Guardian and Ward act, Rev. Stat. 1845, provides for the rendering of accounts by guardians, from time to time, as they may be required by the court of probate, and the guardian's bond contains a like condition as to rendering accounts. There is nothing to show that this report of August 5th was anything more than one of these ordinary accounts to be rendered from time to time, at least more than the circumstance of the ward appearing at the time, and it

being about the time of her coming of age; but we can give to such circumstance no greater effect than that of a higher sanction to the approval of the report than if it had been upon an *ex parte* presentation. Section 18 of said act provides for the allowance to guardians, on final settlement, of fees and compensation for their services. The entire silence of the order and report in respect of any fees or compensation, and also of any former order or report, is an indication against this being a final settlement.

There is no attempt here on the part of the appellee to go behind the order, or the report upon which it was made, or to contradict the same, or any former report, in the respect of receipts or disbursements, or any statement in regard thereto, but the claim is simply one for an allowance of interest. The order itself and the reports of the guardian show that there has never been the allowance of one cent for interest, although there came into the guardian's hands April 10, 1855, $61.75; December 29, 1856, $600; December 29, 1857, $600, and he had in his hands, on December 18, 1866, a balance of $723.88, as shown by his own report.

The finding of the order of August 5th, was of the balance in the hands of the guardian, $128.88. This was but a balance of receipts over disbursements, without any interest whatever included, as appears upon the face of the order and reports, the latter containing all the items of the receipts and disbursements, and no item of interest being among them. There are but two former reports, those of December 18, 1866, and August 5, 1868, and they bear intrinsic evidence that they are the only ones ever made.

There is nothing more just than that there should be an allowance of interest on her money to the ward. The eighth section of the statute referred to makes it the duty of guardians to put to interest the moneys of their wards on mortgage security. There is no pretense of any excuse why interest was not realized from the ward's moneys, and should not be

accounted for, except the technical bar of the order, and the alleged settlement. This, we find to be insufficient.

There having been no discharge of the guardian, and no final settlement of his accounts as guardian, as we find, the county court had the authority to require the guardian to render a final account touching his guardianship, and have a final settlement thereof made. In the adjustment of the accounts of guardians, the county court had equitable jurisdiction. *Bond* v. *Lockwood*, 33 Ill. 219; *In re William Steele, Guardian*, 65 id. 322.

If, in any former report or action of the county court, there had been an omission or mistake in the non-allowance of interest, it might be rectified on such final settlement.

There was some explanation of the delay in commencing the present proceeding, in the testimony given as to legal advice having been taken and given, that it would be useless to take any proceedings, on account of the pecuniary irresponsibility of the guardian and his securities.

Appellee's counsel state that the finding of the court below was for the amount of interest found to be due upon the basis of allowing the guardian six months in which to loan the money in his hands, and then computing compound interest at six per cent up to August 8, 1868, and after that time simple interest, only, to the day of rendering the final order, taking the receipts and disbursements as shown by the reports and vouchers; and a calculation is submitted by counsel, which seems to us correct, showing that a computation upon such basis, after the allowance of commissions to the guardian, will amount to a sum at least as large as that found by the court below. Of such a computation of the interest, appellant has no cause to complain. *Bond* v. *Lockwood, supra; Gilbert* v. *Guptill*, 34 Ill. 112; *In re William Steele, Guardian, supra; Dunscomb* v. *Dunscomb*, 1 Johns. Ch. 507.

Objection is taken by appellant to the introduction in evidence of certain receipts and vouchers. These, it seems, were among the papers in the case in the probate court, some of

which were not marked filed. They were resorted to, as appears, only for the purpose of fixing the dates of certain payments made by the guardian, he giving no dates of the payments made by him in his first report. The items in the receipts corresponding with those in the report, the presumption should be that they were filed by the guardian as vouchers, and they might properly be referred to for the dates of the items.

Finding no error, the judgment must be affirmed.

*Judgment affirmed.*